IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE A. TORRES,

    Plaintiff,                    No. CIV S-06-00540 DAD

    vs.

MICHAEL J. ASTRUE,              ORDER
Commissioner of Social Security,[1]

    Defendant.
_____/

        This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, the undersigned will affirm the decision of the Commissioner of Social Security (Commissioner).

**PROCEDURAL BACKGROUND**

        Plaintiff Jose A. Torres applied for Social Security Disability benefits under Title II of the Social Security Act (the Act) and Supplemental Security Income benefits under Title XVI of the Act in April 2004. (Transcript (Tr.) at 53-55, 321-25.) The Commissioner denied

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

plaintiff's applications initially on August 18, 2004, and upon reconsideration on December 1, 2004.  (Tr. at 25-31, 33-40, 326-38.)  On December 6, 2004, plaintiff requested a hearing before an administrative law judge (ALJ).  (Tr. at 41.)  Plaintiff was represented by counsel at the hearing held on May 24, 2005.  (Tr. at 346-68.)  In a decision issued on August 8, 2005, the ALJ determined that plaintiff was not disabled through the date of the decision.  (Tr. at 14-25.)  The ALJ entered the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's diabetes mellitus, bilateral carpal tunnel syndrome, and status post amputation of the 3rd and 4th toes of the right foot are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. I find the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. The claimant has the following residual functional capacity: he can lift/carry 20 pounds occasionally and 10 pounds frequently.  He can stand/walk for 6 hours in an 8 hour workday.  He can sit without limit.  He can occasionally stoop, bend, twist, squat, and crawl.  He should not climb ladders or scaffolding.  He should not work at heights or around hazardous machinery.  He should not perform work requiring fine visual acuity or tactile discrimination.
>
> 7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).
>
> 8. The claimant is a "younger individual between the ages of 45 and 49" (20 CFR §§ 404.1563 and 416.963).
>
> 9. The claimant has a "limited" education (20 CFR §§ 404.1564 and 416.964).
>
> 10. The claimant has no transferable skills from any past relevant work (20 CFR §§ 404.1568 and 416.968).

>   11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).
>
>   12. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.18 as a framework for decision-making, there is a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a storage facility rental clerk, with 12,500 light unskilled jobs in California.
>
>   13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. at 23-24.) On January 12, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 5-8, 11-13.)

Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on March 14, 2006.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If

substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

/////

/////

**APPLICATION**

Plaintiff advances three arguments in his motion for summary judgment.  First, plaintiff asserts that the Commissioner credited Dr. Richwerger's assessment of plaintiff in general but failed to incorporate a specific portion of that assessment, i.e., the limitation on plaintiff's ability to perform detailed and complex tasks, into the analysis of plaintiff's residual functional capacity or in the hypothetical question posed to the vocational expert.  Second, plaintiff argues that the Commissioner erroneously and without explanation or acknowledgment ignored a treating physician's opinion that plaintiff was disabled and unable to work.  Third, plaintiff contends that the Commissioner erred in failing to mention or discuss the effects of plaintiff's lumbar disc disease and advanced calcific atherosclerosis on plaintiff's ability to perform sustained light work.  The court addresses these arguments below.

I. <u>Whether the Commissioner Rejected Dr. Richwerger's Opinion Regarding Plaintiff's Ability to Perform Detailed and Complex Tasks</u>

Plaintiff contends that the Commissioner's failure to incorporate in the analysis of plaintiff's residual functional capacity (RFC), or in the hypothetical question posed to the vocational expert, any limitation on plaintiff's ability to perform detailed and complex tasks constituted a rejection of the uncontradicted opinion of an examining physician.

The record reflects that plaintiff claimed disability commencing on August 1, 2003, due to diabetes mellitus, bilateral carpal tunnel syndrome, irritability, depression, and decreased concentration.  (Tr. at 18.)  At step two of the sequential analysis, the ALJ found that plaintiff suffers from the following severe impairments:  diabetes mellitus, bilateral carpal tunnel syndrome, and status post amputation of the 3rd and 4th toes of the right foot.  (Tr. at 19.)  Based on the medical evidence, plaintiff's own testimony, and the opinion of Dr. Richwerger, the ALJ found that plaintiff also has a severe mental impairment.  (Tr. at 19.)

David C. Richwerger, Ed.D., a licensed psychologist, conducted a complete psychiatric examination of plaintiff in October 2004.  In his functional assessment, Dr.

Richwerger found plaintiff moderately impaired in one area: the ability to perform detailed and complex tasks. (Tr. at 275.) Dr. Richwerger found slight impairment in plaintiff's ability to perform work activities on a consistent basis, complete a normal workday or workweek without interruption from a psychiatric condition, understand and accept instructions from supervisors, interact with coworkers and the public, and deal with the usual stresses encountered in competitive work. (Tr. at 275-76.) Dr. Richwerger found no impairment in plaintiff's ability to perform simple and repetitive tasks, perform work activities without special supervision, maintain regular attendance in the workplace, and manage his own funds. (Tr. at 275-76.)

The basis for Dr. Richwerger's finding regarding plaintiff's limited ability to perform detailed and complex tasks is not entirely clear, as Dr. Richwerger found that plaintiff "understood most complex tasks." (Tr. at 273.) Plaintiff's mental status examination yielded results within normal limits or in the average range, except that plaintiff's recall was in the low range, and his concentration and attention were in the average to low range. (Tr. at 273-74.)

The ALJ made the following findings with regard to Dr. Richwerger's report:

> The claimant denied ever having been admitted to a psychiatric hospital or receiving outpatient psychiatric treatment or counseling. He does light household chores, drives occasionally, reads the newspaper, and watches television. Dr. Richwerger assigned the claimant a Global Assessment of Functioning score of 65, which indicates that the claimant was experiencing only mild symptoms or some difficulty in social, occupational or school functioning but was generally functioning pretty well. Dr. Richwerger concluded that the claimant had a moderate limitation in his ability to perform detailed and complex tasks, a slight limitation in his ability to perform work activities on a consistent basis, a slight limitation in his ability to complete a normal workday or workweek, a slight limitation in his ability to understand and accept instructions from supervisors, a slight limitation in his ability to interact with co-workers and the public, and a slight impairment in his ability to deal with the usual stresses encountered in competitive work. I accord substantial weight to Dr. Richwerger's opinion as it is consistent with the medical evidence and based on actual examination of the claimant.

(Tr. at 19 (citation omitted).)

/////

1        The ALJ also considered the opinion of a Disability Determination Service (DDS)
2   consulting physician who did not examine plaintiff but

> concluded that the claimant had moderate restrictions in activities
> of daily living, mild difficulties maintaining social functioning,
> moderate difficulties in maintaining in [sic] concentration,
> persistence or pace and there was insufficient evidence that he has
> ever had an episode of decompensation.  He could learn, carry out,
> sustain, and adapt to only simple repetitive tasks.

(Tr. at 19.)  Finding the consulting physician's opinion not consistent with the medical evidence, the ALJ accorded less weight to that opinion and greater weight to Dr. Richwerger's assessment. (Id.)

At step three of the sequential analysis, the ALJ explained that residual functional capacity is defined as "the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks."  (Tr. at 19.)  The ALJ noted his duty to consider "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as medical opinions that "reflect judgments about the nature and severity of the impairments and resulting limitations."  (Tr. at 19-20.)

After reviewing the medical evidence and plaintiff's testimony, the ALJ found that plaintiff retains the following RFC:

> [H]e can lift/carry 20 pounds occasionally and 10 pounds
> frequently.  He can stand/walk for 6 hours in an 8 hour workday.
> He can sit without limit.  He can occasionally stoop, bend, twist,
> squat, and crawl.  He should not climb ladders or scaffolding.  He
> should not work at heights or around hazardous machinery.  He
> should not perform work requiring fine visual acuity or tactile
> discrimination.

(Tr. at 21.)  Based on this RFC, the ALJ concluded that plaintiff "is capable of performing a significant range of light work" and explained that

> [l]ight work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very little, a job is in this

> category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If someone can do light work, we determine that he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods.

(Tr. at 22.) The ALJ also found that plaintiff's ability to perform all or substantially all of the requirements of light work "is impeded by additional exertional and/or non-exertional limitations." (Tr. at 22.)

At the hearing, the ALJ elicited testimony from a vocational expert (VE), Susan Morand, concerning plaintiff's past work. Ms. Morand testified that plaintiff's work as hydraulic mechanic required heavy exertion, that his work as stocker, or shipping and receiving clerk, was between the light and medium exertion levels, and that there are no transferable skills from plaintiff's past jobs. (Tr. at 365-66.) The ALJ asked Ms. Morand to consider a 49 year old individual educated to the 10th grade, who is literate and had the past work history of plaintiff, and the following residual functional capacity: capable of lifting 20 pounds occasionally and 10 pounds frequently; capable of standing and walking in combination for at least six hours in a workday; capable of sitting without limit but not required to stand and walk; able to bend, stoop, twist, squat, kneel, and crawl occasionally; not able to climb ladders, scaffolding, or stairs; unable to work at heights or around hazardous moving machinery; should not be involved in jobs requiring fine visual acuity or tactile discrimination. (Tr. at 365-66.) Ms. Morand stated that plaintiff could not perform his past work and that, with his limitations, available jobs are very limited. (Tr. at 366.) When the ALJ asked for examples of available jobs, Ms. Morand stated that the type of job such a person could perform would include storage facility rental clerk, although she eroded the number of such jobs available in California by 50 percent due to plaintiff's restrictions, leaving approximately 12,500 jobs in California. (Tr. at 366.) Ms.

/////

Morand could not identify any other available jobs, given plaintiff's lack of fine visual acuity and tactile discrimination. (Tr. at 366.)

Although the ALJ's hypothetical question to the VE did not specifically rule out work requiring the ability to perform detailed and complex tasks, plaintiff's attorney asked Ms. Morand to "further assume that this individual is limited to performing simple, repetitive tasks" and learning and understanding simple, repetitive directions. (Tr. at 367.) The ALJ then interjected that Ms. Morand did not indicate the skill level of the storage facility rental clerk job. Ms. Morand responded that the job is unskilled and indicated that her response to the hypothetical with the further limitation to performing simple, repetitive tasks would be the same because the storage facility rental clerk job is unskilled. (Tr. at 367.)

Based on a review of the record, the court is unable to find in the ALJ's decision any finding that constitutes a rejection of Dr. Richwerger's opinion that plaintiff is moderately impaired in his ability to perform detailed and complex tasks. The ALJ expressly noted Dr. Richwerger's conclusion that plaintiff has such a limitation and stated without qualification that he was according substantial weight to Dr. Richwerger's opinion because it was both consistent with the medical evidence and based on an actual examination of the claimant. In his analysis of plaintiff's RFC, the ALJ concluded that plaintiff would only be capable of performing a significant range of light work rather than a full or wide range of such work because plaintiff's ability to perform all or substantially all of the requirements of light work was impeded by additional exertional and/or non-exertional limitations. While the ALJ's RFC analysis does not contain a specific reference to plaintiff's limited ability to perform detailed and complex tasks, the ALJ cited two examples of limiting factors – loss of fine dexterity and inability to sit for long periods – which preclude a determination that a claimant who can do light work is also capable of doing sedentary work. The reference to these examples reflect that the ALJ's RFC analysis was grounded on consideration of appropriate limiting factors.

/////

1         Moreover, at the administrative hearing, when plaintiff's attorney expanded on the
2  ALJ's hypothetical question to the VE by adding the limitation of performing simple, repetitive
3  tasks and learning and understanding such tasks, the ALJ did not object.  Rather, the record
4  reflects that the ALJ appears to have realized his omission of a limitation based on skill level.  At
5  step five of the sequential evaluation, the ALJ is required to question a vocational expert in a
6  manner that properly takes into account the limitations on the claimant's abilities to engage in
7  various work-related functions.  Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001).
8  "While the ALJ need not include all claimed impairments in his hypotheticals, he must make
9  specific findings explaining his rationale for disbelieving any of the claimant's subjective
10 complaints not included in the hypothetical." Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th
11 Cir. 1997).  There is no indication that the ALJ in this case disbelieved Dr. Richwerger's finding
12 of limited ability to perform detailed and complex tasks, and any omission of this impairment in
13 the ALJ's original hypothetical question was cured by counsel's addition of an appropriate
14 limitation which did not alter the vocational expert's opinion regarding the jobs in California
15 available to plaintiff taking into consideration all of his limitations.
16         The court finds that the Commissioner did not fail to consider Dr. Richwerger's
17 assessment of plaintiff's ability to perform detailed and complex tasks, either in determining
18 plaintiff's residual functional capacity or in the hypothetical question posed to the vocational
19 expert.  Plaintiff's argument to the contrary is unpersuasive.
20 II.  Whether the Commissioner Failed to Credit a Treating Physician's Opinion
21         Plaintiff next contends that the Commissioner erroneously, and without
22 explanation or acknowledgment, ignored a treating physician's opinion that plaintiff was
23 disabled and unable to work.  Plaintiff cites two entries made by Dr. Reagor in progress notes
24 dated December 30, 2003, and April 30, 2004.  (Tr. at 230, 232.)  Plaintiff admits that the
25 "opinion" to which he refers contains no specifics but argues that the ALJ was not permitted to
26 ignore it and suggests that the ALJ should have sought clarification.

It is well-established that the medical opinion of a treating physician is entitled to special weight. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830. "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). However, the ALJ is not required to give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (rejecting a treating physician's conclusory, minimally supported opinion); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Here, the treating physician opinion at issue consists of two conclusory remarks found in fourteen pages of medical records provided by Harry E. Reagor, M.D., in response to a request from the DSS dated June 21, 2004. This set of records begins with treatment notes dated October 25, 2002, and ends with notes dated April 30, 2004. (Tr. at 230-43.) In the notes dated April 30, 2004, Dr. Reagor recorded plaintiff's report of increased pain and numbness in his foot and his concern about infection, noted that plaintiff would be having carpal tunnel surgery soon and was not able to work "due to hands and feet," and concluded, "He is disabled." (Tr. at 230.) In the notes dated December 30, 2003, Dr. Reagor recorded that plaintiff felt a little better and his pneumonia was responding to treatment, noted that plaintiff was scheduled to see an infection consultant regarding possible treatment for osteomyelitis, and concluded that plaintiff "will need extension on his disability until foot problem is resolved." (Tr. at 232.)

The conclusory entries cited by plaintiff appear to be observations about plaintiff's evolving condition on specific dates, as demonstrated by progress notes made between

December 30, 2003, and April 30, 2004. For instance, the notes for January 30, 2004, reflected that plaintiff "would like to go back to work," found plaintiff was "improved and stable," and indicated plaintiff was to return to work on February 3, 2004. (Tr. at 232.) On March 12, 2004, the notes indicated an increase in pain and numbness, with a diagnosis of carpal tunnel syndrome. (Tr. at 231.) Plaintiff had carpal tunnel surgery less than two weeks after Dr. Reagor noted on April 30, 2004, that plaintiff was not able to work due to hands and feet and "is disabled." (Tr. at 245-48.) Considered in context, the two progress notes relied upon by plaintiff do not constitute a treating physician's opinion for purposes of determining disability under the Social Security Act.[2]

The court finds that Dr. Reagor's conclusory treatment notes on two specific dates do not constitute an opinion that was not properly credited. Plaintiff's argument to the contrary is rejected.

III. Whether the Commissioner Erred by Failing to Consider New Medical Conditions

Plaintiff argues that the Commissioner erred in failing to mention or discuss the effect of plaintiff's lumbar disc disease and advanced calcific atherosclerosis on his ability to perform even sustained light work.

Plaintiff did not claim disability based on lumbar disc disease and advanced calcific atherosclerosis and did not offer evidence concerning either condition prior to June 2, 2005, after the administrative hearing was conducted. At the hearing, plaintiff's counsel asked that the record be held open for submission of additional records. (Tr. at 350.) In response to the ALJ's inquiry about the additional records, counsel stated that plaintiff had been seen recently by his treating physician, "who referred him out for additional x-rays on his hips" and prescribed medication. (Tr. at 350.) Counsel did not know whether the x-rays would "lead to something else." (Tr. at 350.)

---

[2] Plaintiff received state disability benefits from May 2004 through January 2005. (Tr. at 20.)

At the administrative hearing, plaintiff testified as follows regarding his hips and ability to walk:

> Q   What is it that prevents you from walking now?
>
> A   Pain in my feet.  Numbness in my hands, my legs, my hips – I started to walk a little bit and now my hips start to hurt. That's why I went and seen the doc yesterday.
>
> ***
>
> Q   Are you having anything that would affect your ability to work other than the diabetes and the consequences of the diabetes?
>
> A   Stress – no pain.  Just stress and lack of concentration.
>
> ***
>
> Q   Have you recovered the use of your hands?
>
> A   Yeah.  Pretty much so.  The pain is gone, but the numbness is still there though. . . .
>
> ***
>
> Q   What's a typical day like for you?  What do you do?
>
> A   Well, walk to the post office.
>
> Q   How far is it?
>
> A   Get up in the morning, take my medication, go to the post office – that's about 100 feet away.  A couple of doors down from my house.  Get the mail.  Come home.  We have – my wife cook [sic] breakfast.  I used to be able to walk a good half a mile. Now I go for a walk after breakfast or something, and it just takes it out of me.  I lay down and relax my feet.  Prop them up.
>
> Q   How long is your walk after breakfast?
>
> A   Pardon me?
>
> Q   How long is this walk after breakfast?
>
> A   Half a mile, but the more I – here late last week or so, I haven't been walking too much and –
>
> Q   What's changed in the last week or so?

1          A   My hips. I don't know. They start to hurt, and I don't
know what's causing that. I'm supposed to get x-rays today for
2  that.

3  (Tr. at 355, 358-59.)

4          On June 2, 2005, plaintiff's counsel submitted the results of the pelvis and

5  bilateral hip x-rays for inclusion in plaintiff's file. (Tr. at 294-97.) The results showed

6          excessive calcific atherosclerosis present. Lower lumbar disc
degeneration is accompanied by facet and marginal vertebral body
7  spurring. No destructive lesions or fractures are seen. There are
some early arthritic changes seen in both hips.
8

9  (Tr. at 295.) Plaintiff did not submit any other records pertaining to his newly diagnosed

10  conditions.

11          The ALJ's decision specifically mentions plaintiff's testimony about experiencing

12  pain in his hips as well as in his feet, legs, and hands, and that testimony is considered in

13  determining plaintiff's RFC. (Tr. at 20-21.) Although the ALJ did not discuss the x-ray results

14  that were submitted after the administrative hearing, those results do not suggest any additional

15  limitations resulting from the newly diagnosed conditions. See Sample v. Schweiker, 694 F.2d

16  639, 642-43 (9th Cir. 1989) (the mere existence of a disorder does not establish disability, and

17  the claimant must offer proof of an impairment's disabling severity); see also Howard ex rel.

18  Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ is not required to discuss

19  evidence that is neither significant nor probative). The court finds that the Commissioner did not

20  err in failing to discuss any possible effect of lumbar disc disease and advanced calcific

21  atherosclerosis on plaintiff's ability to perform sustained light work.

22  **CONCLUSION**

23          The court's scope of review in considering decisions granting or denying Social

24  Security benefits is more limited than the scope suggested by plaintiff. See Hall v. Sec'y of

25  Health, Educ. & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979) ("Congress has mandated a very

26  limited scope of judicial review of the Secretary's decisions granting or denying Social Security

disability benefits.")  It is not the court's role to re-weigh the evidence or substitute its own judgment for the Commissioner's.  <u>Winans v. Bowen</u>, 853 F.2d 643, 644-45 (9th Cir. 1987).

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. Defendant's cross-motion for summary judgment is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: September 17, 2007.

*[signature]*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/torres0540.order